**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Garland Scott Holden,<br><br>Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner, Social Security Administration,<br><br>Defendant. | No. CV11-1726-PHX-DGC<br><br>**ORDER** |

Plaintiff Garland Scott Holden applied for disability insurance benefits and supplemental social security income on April 15, 2008, claiming to be disabled since December 26, 2006. Tr. 127, 135. His claim was denied on July 17, 2008 (Tr. 52-53), and upon reconsideration on January 12, 2009 (Tr. 54-55). A hearing before an Administrative Law Judge ("ALJ") was held on April 19, 2010. Tr. 27-50. In a prehearing letter dated April 2, 2010, Plaintiff moved to amend his alleged onset date to June 3, 2008. Tr. 31, 212. The ALJ issued a written decision on July 21, 2010, finding that Plaintiff was not disabled within the meaning of the Social Security Act. Tr. 12-22. The Appeals Council denied review (Tr. 1-5), making the ALJ's decision the final decision of Defendant for purposes of judicial review. Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g). Doc. 1. The parties have not requested oral argument.

**I.     Background.**

Plaintiff alleges disability since June 3, 2008, for chronic knee pain and a seizure disorder. Tr. 31, 14. Plaintiff's appeal is limited to the ALJ's finding of no disability

with respect to Plaintiff's seizure disorder.  Doc. 20 at 4-8.

**A.	Medical Evidence.**

On June 29, 2007, prior to Plaintiff's alleged onset date, he presented to the Department of Veteran Affairs ("VA") with complaints of an alleged seizure disorder. Tr. 18, 351.  Plaintiff reported seizures occurring about one week apart.  Tr. 351. Plaintiff admitted that he drank a 12-pack of alcohol a day.  Tr. 18, 351.  Plaintiff was advised not to drive or operate machinery and to seek further testing.  Tr. 18, 353-54.

On August 3, 2007, Plaintiff was admitted to Payson Regional Hospital after another seizure.  Tr. 18, 257.  He was treated by Dr. Michael Paulk who noted that Plaintiff was intoxicated upon admission.  *Id.*  Dr. Paulk released Plaintiff with the instructions to stop drinking alcohol and to follow-up with his primary care physician as needed.  Tr. 18, 264.

On October 24, 2007, Plaintiff returned to Payson Regional after experiencing another seizure.  Tr. 18, 224.  Plaintiff was again treated by Dr. Paulk who noted that Plaintiff had stopped taking his medication and had been drinking.  *Id.*  Dr. Paulk released Plaintiff with the instructions to take his medications as prescribed and to stop drinking alcohol. Tr. 18, 225.

On November 6, 2007, Plaintiff was treated by Dr. John Sorteberg at the VA. Tr. 19, 343.  Plaintiff reported having a seizure the day before and experiencing seizures about every three weeks.  Tr. 343.  Plaintiff reported not taking any anti-seizure medications and that he was waiting to see a neurologist about an abnormal MRI.  *Id.*  Dr. Sorteberg reviewed Plaintiff's medical records and determined that his seizures were likely the result of brain injury to frontal lobes and drinking alcohol.  *Id.*  Dr. Sorteberg also noted that Plaintiff took medicine to minimize his withdrawal effects of alcohol. Tr. 19, 343. Dr. Sorteberg advised Plaintiff not to drink anymore.  *Id.*

A VA note from November 13, 2007, indicates that Plaintiff presented with generalized epilepsy, and that Plaintiff reported he had been drinking a 12-pack of beer, but that he was no longer drinking.  Tr. 19, 341.

On June 3, 2008, the amended alleged onset date, Dr. Lawrence opined that Plaintiff's seizures were not well enough controlled to permit him to work, despite medication. Tr. 19, 429-29.

On October 1, 2008, Plaintiff suffered a seizure in the backseat of a police car and was taken to the emergency room. Tr. 19. Plaintiff was again treated by Dr. Paulk, who noted that Plaintiff was intoxicated. *Id.* Dr. Paulk released Plaintiff with the instruction to avoid alcohol and to take his prescription medications regularly. *Id.*

On October 29, 2008, Plaintiff called Dr. Lawrence, requesting to be released back to work because his seizures were under control. Based on Plaintiff's report, Dr. Lawrence opined that Plaintiff could go back to work part-time. Tr. 19, 422.

On November 5, 2008, Plaintiff called the VA and reported that he was still experiencing seizures. Tr. 19, 421. Plaintiff said he was taking his medication, but that he did not take the full dosage because it caused him to get dizzy. Tr. 421.

On November 18, 2008, Dr. Lawrence noted that Plaintiff's last seizure had been a week earlier. Tr. 421, 468. Plaintiff reported not feeling well taking Carbamazepine and forgetting to take that day's dosage. Tr. 468. Dr. Lawrence indicated that he planned to adjust Plaintiff's medications and specifically increase his Dilantin dosage and taper him off Carbamazepine. *Id.* Plaintiff sought treatment from Dr. Lawrence on December 3, 2008, to further adjust his medication. *Id.* On January 14, 2009, Plaintiff reported that he was still having partial seizures. Tr. 468.

On January 26, 2009, Plaintiff was admitted to Payson Regional and complained of a seizure disorder and alcohol withdrawal. Tr. 19, 612. At the time he was at Community Bridges for alcohol therapy, but had difficulty obtaining his increased Dilantin dosage and had a grand mal seizure the night before his admission. Tr. 612.

On March 15, 2009, Plaintiff was admitted to Payson Regional after having consumed eight ounces of isopropyl alcohol in 45 minutes. Tr. 607. Plaintiff reported that he was an alcoholic, had been in an alcohol withdrawal program, but had fallen off the wagon. *Id.* At that time, Plaintiff reported taking both Dilantin and Carbamazepine.

*Id.* Plaintiff was determined to have a seizure disorder secondary to alcohol abuse presently stable. Tr. 608.

On September 29, 2009, Plaintiff reported drinking a six-pack of beer one day a week. Tr. 19, 714.

At the request of the Disability Determination Service Administration ("DDSA"), Plaintiff attended a physical examination with Dr. Ketan Vora on June 27, 2008. Tr. 20, 403-408. Dr. Vora diagnosed Plaintiff with a seizure disorder, currently not under control (Tr. 407), and opined that Plaintiff should not operate any heavy machinery until his seizure disorder stabilized "to prevent endangerment of his life or the life of others" (Tr. 19, 408). Plaintiff was described as "an adequate historian" who provided a history "consistent throughout" the examination, and who "was not noted to have exaggerated any of his symptoms." Tr. 406. Plaintiff reported seizures occurring at a rate of twice per month for a year. Tr. 404. At the time, Plaintiff was taking Carbamazepine for his seizures, and Plaintiff informed Dr. Vora that the dosage had recently been increased. *Id.* Plaintiff admitted to drinking a six-pack of beer per day. Tr. 19, 405.

In July 2008, state agency physician Dr. Charles Fina reviewed Plaintiff's medical records and completed an RFC assessment. Tr. 20, 408-416. The assessment indicated that Plaintiff's primary diagnosis was chronic alcoholism and a seizure disorder. Tr. 408. The assessment indicated that functional capacity limits relative to Plaintiff's seizures would "be addressed in the body of the text" (Tr. 410), but Dr. Fina does not appear to have addressed such limits in the assessment.

In January 2009, state agency physician Dr. Vivienne Kattapong reviewed Plaintiff's record and affirmed the previous RFC determinations. Tr. 20, 464. Dr. Kattapong noted that Plaintiff's "functional allegations are not credible," that his seizures appear related to alcohol abuse, and that he has a history of non-compliance. *Id.*

On November 20, 2009, Dr. L. Friedman, Plaintiff's most recent treating physician, assessed Plaintiff's functional capacity. Tr. 20, 735-36. Dr. Friedman opined that Plaintiff has intermittent and unpredictable grand mal and complex partial seizures at

a rate of approximately "1/month."  Tr. 736.  Dr. Friedman's specific limitation for Plaintiff was that he was not allowed to drive.  *Id.*

**B.**     **Hearing Testimony.**

At the April 19, 2010 hearing, Plaintiff testified that his seizures "happen about still once a month or so."  Tr. 35.  Plaintiff stated that he cannot describe the seizures because he loses consciousness.  *Id.*  Plaintiff testified he sometimes loses consciousness for about a half hour during a grand mal seizure (Tr. 35-36, 37), and then suffers from severe fatigue for two to three days thereafter (Tr. 36, 37).  Plaintiff testified he can remember certain things about his petit mal seizures (Tr. 36), and that he suffers from severe fatigue for the remainder of the day and sometimes the day after as well (Tr. 37-38). Plaintiff testified he takes Dilantin to control his seizures.  *Id.*  Plaintiff stated that he has been taking Dilantin for about three years, but the dosage has been changed over time because he gets sick if the dosage is too large and still has seizures if the dosage is too small.  *Id.*  Plaintiff testified that he stopped consuming alcohol six months before the hearing, and that he continued to experience seizures during this time.  Tr. 36-37.

The ALJ then noted that his problem with the case was that the record showed that Plaintiff continued to drink significantly and stated that "I don't pay people who . . . are alcoholics."  Tr. 44.  Plaintiff's attorney responded by pointing to medical records from after the amended alleged onset date and noting that they do not discuss whether Plaintiff's seizures are alcohol related.  *Id.*  The ALJ then asked Plaintiff if he had undergone alcohol rehabilitation, and Plaintiff responded that he had a year earlier for 30 days, but he did not recall the exact date.  Tr. 45.  The ALJ responded by announcing that "you know, when people stop drinking alcohol, you know, alcohol has been such a significant thing in their life, they know when they stopped."  *Id.*  The ALJ asked Plaintiff about the 2009 medical records from Southwest Behavior and the Casa Regional Medical Center regarding his alcohol consumption, and Plaintiff testified that those records were wrong.  Tr. 44-46.  The ALJ concluded by noting "he's not owning up to the alcohol problem."  Tr. 46.

The ALJ asked vocational expert, Mr. Bluth, about a hypothetical person of Plaintiff's age and education who is able to do unskilled sedentary work, with the further limitations of no crawling, crouching, climbing, squatting, or kneeling; no exposure to unprotected heights or moving machinery; and no use of extremities for pushing or pulling, lifting and carrying ten pounds occasionally lifting, and carrying five pounds frequently. Tr. 47. Mr. Bluth responded that there are jobs that exist in the national economy for such a hypothetical person, and gave examples of cashiers and quality control inspectors. Tr. 48. The ALJ asked if a person would be terminated if they missed three or more days per month and Mr. Bluth responded affirmatively. *Id.* Claimant's attorney asked whether a person who missed two days a month on a regular basis would have difficulty sustaining work and again Mr. Bluth responded that they would. *Id.*

## II. Standard of Review.

Defendant's decision to deny benefits will be vacated "only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In determining whether the decision is supported by substantial evidence, the Court must consider the record as a whole, weighing both the evidence that supports the decision and the evidence that detracts from it. *Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1998). The Court cannot affirm the decision "simply by isolating a specific quantum of supporting evidence." *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975); *see Robbins*, 466 F.3d at 882.

## III. Analysis.

Whether a claimant is disabled is determined using a five-step sequential evaluation process. The claimant bears the burden in steps one through four. To establish disability, the claimant must show (1) he is not currently working, (2) he has a severe medically determinable physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) his residual functional capacity ("RFC")

precludes him from performing his past work.[1]  At step five, the Commissioner bears the burden of showing that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy.  20 C.F.R. § 416.920(a)(4)(i)-(iv); *see* 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments).  "The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines[.]"  *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999)).

Plaintiff has not worked since the alleged onset date of disability.  Tr. 14, ¶ 2.  The ALJ found that although Plaintiff's chronic knee pain and seizure disorder were severe impairments when considered in combination (Tr. 14, ¶ 3), Plaintiff did not have an impairment or combination of impairments severe enough to meet or equal one of the listed impairments (Tr. 16-17, ¶ 4).  The ALJ concluded that while Plaintiff is not able to perform his past work (Tr. 20, ¶ 6), he is not disabled because he has the RFC to perform unskilled sedentary work (Tr. 17, ¶ 5), including the jobs of assembler, cashier, and quality control inspector (Tr. 21).

Plaintiff argues that the ALJ erred in failing to find that his impairments meet or equal listing 11.02 (Doc. 20 at 6), failing properly to consider the effects of all of Plaintiff's impairments in determining RFC (*id.* at 4-5), rejecting the opinion of a treating source (*id.* at 5), and failing properly to evaluate Plaintiff's credibility (*id.* at 7).  Defendant contends that the ALJ's decision is supported by substantial evidence and free from legal error.  Doc. 21 at 8.

**A.   Listing 11.02 – Epilepsy — Convulsive Epilepsy.**

"The Commissioner has promulgated a 'Listing of Impairments' that are 'so severe that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform [her] past relevant work or any other jobs.'"  *Frazier v.*

---

[1] RFC is the most a claimant can do given the limitations caused by his impairments.  *See Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989); 20 C.F.R. § 416.927(a); SSR 96-8p, 1996 WL 374184 (July 2, 1996).

*Astrue*, No. CV-09-3063-CI, 2010 WL 3910331, at *3 (E.D. Wash. Oct. 4, 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995)).  Listing 11.02 requires "convulsive epilepsy (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment" with either (1) daytime episodes or (2) nocturnal episodes manifesting residuals which interfere significantly with activity during the day.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02. Section 11.00 of Appendix 1 provides further information about evaluation of listing 11.02: "Under 11.02 [], the criteria can be applied only if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00(A).  "Where documentation shows that use of alcohol or drugs affects adherence to prescribed therapy or may play a part in the precipitation of seizures, this must also be considered in the overall assessment of impairment level." *Id.*

The ALJ found that Plaintiff did not meet listing 11.02.  Tr. 17.  Plaintiff argues that the ALJ erred because the record demonstrates that he has been experiencing seizures at a frequency of more than once per month since June 2008.  Doc. 20 at 6.

Under listing 11.02, Plaintiff must prove that his grand mal seizures occurred more than once a month.  There is no indication from his medical records that the seizures occurred this frequently, and Plaintiff stated in his own hearing testimony that he was having seizures "about . . . once a month."  Tr. 35.  Questionnaires submitted by Plaintiff and his wife advising that Plaintiff was having two seizures a month in June of 2008 are the only evidence of record which supports a finding of such frequency.  Tr. 170, 173; Doc. 20 at 6.  These questionnaires do not specify whether the June 2008 seizures were grand mal or petit mal and thus are too vague to indicate that Plaintiff met the frequency and severity of seizures required under listing 11.02.  Additionally, Dr. Friedman's opinion that Plaintiff experienced seizures at a rate of approximately "1/month" (Tr. 736) fails to satisfy the listing's requirement of "more frequently than once a month."  20

C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02.  In sum, the record does not show that Plaintiff experienced grand mal seizures at the frequency required to meet or equal listing 11.02.

### B. The RFC Determination.

The ALJ concluded that Plaintiff can perform unskilled sedentary work with the following additional limitations: no crawling, crouching, climbing, squatting, or kneeling; no exposure to unprotected heights or moving machinery; no use of extremities for pushing or pulling; and lifting and carrying limited to ten pounds occasionally and five pounds frequently.  Tr. 17, 18.  Plaintiff argues that the ALJ erred in improperly rejecting a medical opinion, misinterpreting medical evidence, and failing to consider all of his seizure symptoms.  Doc. 20 at 4.

The law is clear.  In determining RFC, the ALJ must consider the combined effects of *all* impairments.  42 U.S.C. § 423(d)(2)(B); *see also Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996) (citation omitted).  The ALJ found the combination of Plaintiff's seizure and knee conditions to be severe (Tr. 14, ¶ 3), but imposed no limitation with respect to Plaintiff's testimony that he had no functional capacity for one to three days after a seizure.

#### 1. Medical Opinion Evidence.
##### a. Dr. William H. Lawrence.

The ALJ gave little weight to Dr. Lawrence's June 3, 2008, opinion on the grounds that his opinion simply stated that Plaintiff could not work and did not detail any specific limitations, and that the opinion of disability is an issue reserved for the Commissioner.  Tr. 19.  The ALJ did not specify what weight he gave to Dr. Lawrence's October 29, 2008, opinion, and Plaintiff argues that affording this opinion any weight would constitute a misinterpretation of the evidence because the record shows Plaintiff had experienced seizures earlier in October 2008 (Tr. 506), and again a few weeks after Dr. Lawrence's release (Tr. 421).  Defendant submits that the ALJ presumably adopted Dr. Lawrence's October 29, 2008 opinion because it comports with the ALJ's ultimate determination that Plaintiff could perform work, and argues that the ALJ's failure to state

what weight he gave the opinion is harmless error.  Doc. 21 at 12 (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." (quotation marks and citations omitted)).  Since Dr. Lawrence's October opinion does not support Plaintiff's disability claim, the Court finds that the ALJ committed harmless error when he failed to specify the weight he gave to it.

### b.   Dr. L. Friedman.

Dr. Friedman completed a medical assessment form on November 20, 2009, opining that due to "intermittent and unpredictable seizures" occurring approximately "1/month" (Tr. 736), Plaintiff should not drive (*id.*).  Plaintiff asserts that the ALJ erred in rejecting Dr. Friedman's opinion regarding his seizure frequency.  Doc. 20 at 5.  To the contrary, the ALJ stated that he gave "significant weight" to Dr. Freidman's opinion, and adopted Dr. Friedman's opinion in finding that Plaintiff's RFC prohibits work near moving machinery.  Tr. 20.  Consistent with Dr. Friedman's assessment, the ALJ also concluded that Plaintiff experiences seizures.  *Id.*  This does not constitute legal error.

### c.   Medical Opinion Summary.

The ALJ determined that Plaintiff's "seizures are alcohol-induced and can be controlled through a combination of sobriety and compliance with prescription medications."  Tr. 20.  Plaintiff submits that the record lacks any evidence indicating a diagnosis of alcohol-induced seizures, and argues that the ALJ misinterpreted the evidence in making a diagnosis unsupported by the record.  Doc. 20 at 5.

The ALJ based his conclusion on a finding that the times Plaintiff suffered seizures "were generally coupled with severe alcohol intoxication and/or noncompliance with prescription medications."  Tr. 20.  The ALJ's opinion cites to medical notes indicating Plaintiff experienced seizures when he consumed alcohol and did not take his prescription medications.  Tr. 18-20.  For example, on November 6, 2007, Dr. Sorteberg concluded that Plaintiff's seizures were likely due "brain injury to frontal lobes and

drinking alcohol." Tr. 343. His plan for Plaintiff was: "Don't drink alcohol anymore" and see a neurologist. *Id.* On October 1, 2008, Plaintiff had a seizure while in custody in the back of a police car and was taken to the hospital. Tr. 506-508. He was intoxicated upon arrival. Special instructions given to Plaintiff on discharge were to take his medication and "don't drink alcohol." Tr. 507. These facts were noted by the ALJ. Tr. 19. The ALJ also noted that Plaintiff attended alcohol therapy in January of 2009, but was admitted to the hospital in March of that year after drinking isopropyl alcohol because there was no beer in the house. *Id.*

In addition to these and similar facts he recited, the ALJ gave significant weight to state agency examiner Dr. Kattapong's opinion that Plaintiff's seizures are related to alcohol abuse. Tr. 20, 464. No medical source opinion contradicts the assessment of Dr. Kattapong, and much of Plaintiff's history supports it. Because an examining physician's opinion that comports with other record evidence may constitute substantial evidence, the ALJ's conclusion that Plaintiff's seizures are alcohol-related and controllable is supported by substantial evidence. *See Thomas*, 278 F.3d at 957; *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's opinion may constitute substantial evidence supporting ALJ's decision).[2]

### 2. Plaintiff's Testimony.

Plaintiff testified that seizures leave him too weak to work for one to three days (Tr. 35-36, 37-38), but the ALJ found that his testimony concerning the limiting effects of his symptoms were not credible (Tr. 20). In reaching this conclusion, the ALJ was required to evaluate Plaintiff's testimony using the two-step analysis established by the Ninth Circuit. *See Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Applying the

---

[2] Plaintiff's opening brief (he did not file a reply brief) takes a scatter-shot approach to its arguments, failing to identify defects in the ALJ's decision with precision. Plaintiff does not specifically assert that the ALJ erred in rejecting his testimony that he had not been drinking for several months and yet continues to have seizures. Doc. 20 at 7. If Plaintiff were to make this argument, the Court would conclude that the ALJ's discounting of this testimony is supported by the substantial evidence recited in his opinion, as described above, including Dr. Kattapong's opinion. *See* Tr. 17-20.

test of *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), the ALJ first determined that Plaintiff's impairments could reasonably produce some of the symptoms alleged. Tr. 20. Given this conclusion, and because the ALJ found no evidence of malingering, the ALJ was required to present "specific, clear and convincing reasons" for finding Plaintiff not entirely credible. *Smolen*, 80 F.3d at 1281. This clear and convincing standard "is the most demanding required in Social Security cases." *Moore v. Comm'r of SSA*, 278 F.3d 920, 924 (9th Cir. 2002).

Unfortunately, in explaining his reasons for rejecting Plaintiff's testimony, the ALJ said only this: "Claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Tr. 20. No further explanation was provided. The ALJ did not identify or discuss the evidence on which he was relying, did not give specific, clear, and convincing reasons for his determination, and made no specific findings. This constitutes legal error. *See Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007) (general assertions that the claimant's testimony is not credible are insufficient because the ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints.").

**III.   Remedy.**

Defendant's decision denying benefits must be reversed because it is based on legal error. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (2008). This Circuit has held that evidence should be credited as true, and an action remanded for an award of benefits, where (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) no outstanding issues remain that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were the rejected evidence credited as true. *See, e.g.*, *Varney v. Sec'y of HHS*, 859 F.2d 1396, 1400 (9th Cir. 1988); *Smolen*, 80 F.3d at 1292; *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004); *Orn v. Astrue*, 495 F.3d 625, 640 (9th Cir. 2007). The second and third steps of this test are not satisfied here.

Plaintiff testified that his seizures leave him unable to work for one to three days. The vocational expert testified that an absenteeism rate of two days per month would make sustained employment difficult, and that termination would result from missing three days in any given month. Tr. 48. The Court has found, however, that substantial evidence supports the ALJ's determination that Plaintiff's seizures are alcohol-related and controllable. The record therefore does not show that Plaintiff would miss two or three days per month as a result of his seizure condition if he took his medications and stopped drinking. As a result, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if Plaintiff's testimony about the effects of a seizure is credited as true. Remand to the ALJ is appropriate to determine whether Plaintiff's condition, in a controllable state, would require a finding of disability.

**IT IS ORDERED:**

1. Defendant's decision denying insurance benefits is **reversed**.
2. The case is **remanded** for further proceedings consistent with this order.
3. The Clerk is directed to enter judgment accordingly.
4. The Clerk shall terminate this matter.

Dated this 25th day of January, 2013.

_____
David G. Campbell
United States District Judge